

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T  +1 202 637 5600
F  +1 202 637 5910
www.hoganlovells.com

November 5, 2019
**Filed Via ECF**

Hon. Arlene R. Lindsay
United States Magistrate Judge
Eastern District of New York
814 Federal Plaza
Central Islip, NY 11722-4451

Re:  *Adlife Marketing & Communications Co., Inc. v. Best Yet Market, Inc.*,
       **Case 2:17-cv-02978-ADS-ARL**

Dear Judge Lindsay:

  In accordance with Local Civil Rule 37.3 and Rule 2.A of Your Honor's Individual Practices, Defendant Best Yet Market, Inc. ("**Best Market**") respectfully requests an Order under Federal Rule of Civil Procedure 37 compelling Plaintiff Adlife Marketing & Communication Co. Inc. ("**Adlife**") to (i) produce documents concerning license fee offers for Adlife's food images; (ii) confirm that Adlife has searched for documents concerning Adlife's copyright applications and registrations in a manner that would produce any responsive documents; and (iii) confirm that Adlife's paper records and Joel Albrizio's personal records have been searched in a manner that would produce any responsive documents. If the searches indicated in (ii) and (iii) were not conducted as described, Best Market respectfully requests that the Court order such searches to be conducted as described and any responsive documents to be produced.

  This is a copyright infringement case in which Adlife alleges Best Market improperly used Adlife's food images in Best Market's grocery circulars without a license. On December 18, 2018, Best Market served its first set of document requests pursuant to Federal Rule of Civil Procedure 34 ("**Exhibit A**"). Adlife responded with their objections to Best Market's requests on January 17, 2019 ("**Exhibit B**"), along with a document production. After Best Market changed counsel, Best Market contacted Adlife on August 9, 2019 to query why Adlife had failed to produce responsive documents for the majority of the requests for which it had agreed to produce documents ("**Exhibit C**"). Adlife responded on August 16, 2019 with further objections to Best Market's requests ("**Exhibit D**") and another document production. Given Adlife's intransigence with producing relevant and responsive documents, Best Market served a second set of document requests on September 4, 2019 ("**Exhibit E**"). Adlife responded and objected to these requests on October 4, 2019 ("**Exhibit F**") and produced a few more documents on October 10, 2019. Counsel for Best Market and Adlife have met and conferred regarding Adlife's persistent refusal and/or inability to produce responsive documents.

I. **License Fee Offers for Adlife's Food Images**

  Best Market has requested any documents regarding Adlife's license fee offers for its food photography, including any offers Adlife made for any image in Adlife's image library offered at www.preparedfoodphotos.com in connection with disputes, accusations, or claims regarding Adlife's photos. These items were requested in connection with the following requests for document production ("**RFP**")[1]:

- **RFP 20:** All Documents and Communications consisting of, concerning, regarding, referring to, or relating to any agreement, license, or permission to use the Food Photographs that was offered and/or granted by You to any person.
- **RFP 35:** All Documents and Communications concerning any disputes, accusations, or claims between Adlife and any third party involving copyright infringement of any image in Adlife's catalog offered at www.preparedfoodphotos.com.

---

[1] Best Market's second set of RFPs contained a typographical error concerning the URL of Adlife's website. This was clarified between counsel on October 11, 2019.

- **RFP 37:** All Documents and Communications regarding license pricing for food image photographs, including but not limited to food images photographs comparable to Adlife's Accused Images and/or Adlife's images available at www.preparedfoodphotos.com.

These requests are directly relevant to Adlife's burden of establishing its actual damages in this case in the form of a reasonable licensing fee, as is commonly awarded in copyright infringement cases. This fee is the fair market value of the works, which is "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *On Davis v. The Gap, Inc.,* 246 F.3d 152, 166-67 (2d Cir. 2001); *DaimlerChrysler Servs. v. Summit Nat'l*, No. 0271871, 2006 WL 208787, at *2 (E.D. Mich. Jan. 26, 2006) (a copyright owner "may not rely on its own subjective estimate as to the price it would have charged [an alleged infringer] . . . [a copyright owner] must introduce evidence of the fair market value of [the copyrighted work] at the time of infringement"). Grouding actual damages in the fair market value of a work minimizes the risk of abuse by the copyright owner. *Davis*, 246 F.3d at 166.

To date, Adlife has not produced any information regarding the fair market value of a license for its image library, let alone the fair market value of a license for one of its accused images, both of which are necessary to calculate damages in this case. Best Market is therefore entitled to discovery regarding Adlife's license fee offers and license agreements for any of the images available at www.preparedfoodphotos.com, including but not limited to the Food Photographs, and any third party license pricing for comparable photos that Adlife has in its possession, custody or control so that it may defend against Adlife's claim for actual and/or statutory damages.

## II.     Communications Concerning Copyright Applications

Adlife must also confirm that it searched the electronic and physical files of all employees responsible for preparing Adlife's copyright applications for any documents regarding Adlife's copyright applications for the images at issue in this case in a manner that would produce responsive documents. These items were requested in connection with the following requests for document production ("**RFP**"):

- **RFP 32:** All Documents and Communications regarding Adlife's process for identifying the author(s) of the Accused Images when applying to register these images with the U.S. Copyright Office.
- **RFP 33:** All Documents and Communications concerning Adlife's copyright applications of registrations for the Accused Images.
- **RFP 34:** All written correspondence between Adlife and the U.S. Copyright Office concerning the copyright applications and/or registrations for the Accused Images.

During Adlife's Rule 30(b)(6) deposition, Mr. Fleurant testified that Jeremy Howard, Rebecca Jones, and Sharon Albrizio were all, in part, responsible for preparing Adlife's copyright applications for the registrations for the accused images at issue in this case. (Fleurant Dep. 115:23-116:18) [2]. However, Mr. Fleurant was uncertain whether these employees' emails had been searched. (Fleurant Dep. 37:13-22). Adlife has produced limited internal communications regarding its copyright filings, which amount to roughly a dozen emails in which Mr. Fleurant attempts to reply to inquiries from the Copyright Office about authorship and ownership with Ms. Jones' assistance. However, Adlife has not produced any documents or communications regarding preparation of its copyright applications, including what information was to be included in its copyright applications, who should be listed as the author, the dates of creation and publication to be included in the applications or other similar matters, nor have they produced copies of the copyright applications or any communications from Mr. Howard or Ms. Albrizio regarding Adlife's copyright applications.

Adlife must possess valid copyright registrations in its images in order to litigate this case. *See* 17 U.S.C. § 411. Adlife also bears the prima facie burden of establishing ownership of valid copyrights. *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016). Best Market contests Adlife's ownership of the images at issue and the validity of Adlife's corresponding copyright registrations. As such, Best Market is entitled to discovery on these facts. Given the minimal

---

[2]   Relevant deposition excerpts for this motion are attached as **Exhibit G**.

documents produced in response to these requests – particularly when Adlife only began applying for copyrights approximately three years ago – Best Market seriously doubts that Adlife conducted a comprehensive search for responsive documents. Adlife and its counsel must therefore "take affirmative steps to ensure that all sources of discoverable information are identified and searched." *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 410 (S.D.N.Y. 2015)(internal quotations omitted). Adlife must confirm whether the electronic and paper files of the above-referenced individuals were searched in a manner that would produce responsive documents in connection with these requests should such documents exist, as Adlife's counsel was unable to advise how the document searches were conducted, including whether search terms were utilized that would have retrieved documents responsive to Best Market's requests. If such searches were not adequately conducted, Adlife must be compelled to complete such searches.

**III.      Thoroughness of Document Searches**

Adlife must also confirm whether Adlife's paper files and the personal files of Adlife's President Joel Albrizio were searched in a manner that would produce documents responsive to Best Market's discovery requests.

During Adlife's Rule 30(b)(6) deposition, Mr. Fleurant testified that Adlife has paper files that were not searched (Fleurant Dep. 34:15-37:5) and that Joel Albrizio provided a copy of his 1994 stock purchase agreement from his personal files (Fleurant Dep. 96:12-97:21). As noted above, Adlife and its counsel must "take affirmative steps to ensure that all sources of discoverable information are identified and searched," *Skyline Steel,* 101 F. Supp. 3d at 410, which would require Adlife to search paper records in addition to electronic records. Moreover, any party that has a "practical ability" to obtain work-related documents from non-parties, such as employees, must obtain and produce such documents. *See Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994)("[i]f the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party.").

Best Market expects that Mr. Albrizio, as President of Adlife, would have searched and provided all relevant information from his personal files in response to Best Market's discovery requests, including, but not limited to, any work for hire agreement between Adlife and J.M. Albrizio, Inc. or any other documents relevant in this case, since there is no doubt that as Adlife's President he has the practical ability to do so. However, Adlife's admission that its paper records were not searched and its testimony that it has not issued a litigation hold in connection with this case (and that is it possible that Adlife employees may have deleted relevant and responsive documents prior to or during the pendency of this case), (Fleurant Dep. 33:3-15), causes Best Market serious concern as to the thoroughness of Adlife's retention of and searching for responsive documents. *See Toussie v. Cty. of Suffolk*, No. CV 01-6716, 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007) ("The law is very clear that the failure to implement a litigation hold at the outset of litigation amounts to gross negligence.") (Lindsay, J.).

Accordingly, Adlife must confirm whether Adlife's paper files and Mr. Albrizio's personal files were searched in a manner that would produce documents responsive to Best Market's document requests. If not, Adlife must be compelled to complete such searches and produce responsive documents.

*          *          *

Best Market therefore asks that the Court enter an Order granting the relief sought herein.

Respectfully,

*/s/ Lauren Chamblee*

Lauren C. Chamblee
*Attorney for Defendant*

## RULE 37 CERTIFICATION

I hereby certify that on November 5, 2019, I met and conferred with Ryan E. Carreon, counsel for Adlife Marketing and Communications Co. Inc., via telephone wherein the parties were unable to agree on a resolution to the subjects of this motion.

/s/ *Lauren C. Chamblee*
Lauren C. Chamblee
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
lauren.chamblee@hoganlovells.com